IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIVE AMERICAN ARTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Judge Pallmeyer |
| | ) | |
| v. | ) | Case Number 07 C 7109 |
| | ) | |
| A.J. WRIGHT, A DIVISION OF THE TJX COMPANIES, INC., | ) ) | |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |

**PLAINTIFF NATIVE AMERICAN ARTS, INC.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1)**

NOW COMES Plaintiff Native American Arts, Inc., by its attorneys, Michael P. Mullen and Scott M. Kolosso of the law firm of Mullen & Foster, and for its Response to Defendant A.J. Wright, a division of the TJX Companies, Inc.'s, Motion to Dismiss, states as follows:

**I.    INTRODUCTION**

Native American Arts, Inc. ("NAA") filed a complaint against Defendant A.J. Wright, a division of the TJX Companies, Inc. ("A.J. Wright"), alleging violations of the Indian Arts and Crafts Act, 25 U.S.C. § 305e ("IACA").  A.J. Wright is a large nationwide chain of stores, including multiple retail establishments in Chicagoland, which offers, displays and sells, among other items, Indian products.

The IACA is a truth-in-marketing statute designed to stop the false suggestion that products are Indian-made when they are not.  The IACA prohibits a person from directly or indirectly offering, displaying or selling goods in a manner that falsely suggests it is Indian produced, an Indian product or the product of a particular Indian, Indian tribe or Indian arts and crafts organization.  Congress in enacting the IACA sought to eliminate the flood of imitation

1

Indian products in the marketplace that harms not only consumers but threatens to put Indian artisans out of business. (*See* S. Rep. No. 106-452, "Congress estimates that the Indian arts and crafts market is worth 1 billion dollars annually, of which $500 million is made up of counterfeit goods").

In the pending motion to dismiss, Defendant argues that the Complaint does not sufficiently allege NAA's injuries in order to satisfy Article III standing requirements under Rule 12(b)(1). However, NAA does satisfy all Article III standing requirements because, as alleged in the Complaint, NAA has suffered a concrete and particularized injury caused by A.J.Wright's violative conduct and NAA's injury is redressable by a favorable ruling. Clearly, the Complaint sets forth "enough factual matter (taken as true) to provide minimum notice of the plaintiff's claims" under the IACA. In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation, 491 F.3d 638 (7th Cir. 2007).

All Northern District of Illinois judges who have addressed this standing issue, under nearly identical allegations as here, have held accordingly. *See* NAA v. J.C. Penney Co., Inc., 5 F.Supp.2d 599 (N.D.Ill. 1998)(J. Castillo), NAA v. Bundy-Howard, Inc., 168 F.Supp.2d 905 (N.D.Ill. 2001)(J. Shadur), NAA v. Giftmart Trading Post, et. al., Case No. 01 C 2892, 1-16-2002 Minute Order)(J. Bucklo) and NAA v. Duck House, Inc., Case No. 05 C 2176 (3-1-2007 Memorandum Opinion)(J. Hart). Most importantly, on November 7, 2007, this Court rejected a similar 12(b)(1) motion to dismiss based upon nearly identical allegations under the IACA in NAA v. Finding King, Case No. 06 C 6143.

Accordingly, Plaintiff has sufficiently satisfied the jurisdictional requirements for Article III standing and Defendant's 12(b)(1) Motion to Dismiss must be denied.

**II.      MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. RULE 12(b)(1)**

**A.      STANDARD OF REVIEW – RULE 12(b)(1)**

Defendant is challenging the sufficiency of Plaintiff's allegations and, accordingly, the appropriate standard of review for Defendant's Rule 12(b)(1) motion is that the Court must take all of Plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in a light most favorable to the Plaintiff. Transit Exp. Inc. v. Ettinger, 246 F. 3d 1018, 1023 (7th Cir. 2001); Berg v. BCF Financial Corporation, 372 F.Supp.2d 1080, 1088-1099 (N.D. Ill. 2005). At the pleading stage, general allegations of injury are usually sufficient to demonstrate standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).[1]

**B.      NAA SATISFIES ALL ARTICLE III STANDING REQUIREMENTS**

NAA can establish Article III standing necessary to prosecute this action. Article III standing requires a plaintiff to show the following: (1) that it suffered injury-in-fact; (2) that said injury is fairly traceable to Defendant's actions; and (3) that a favorable decision will redress the injury. Lujan at 560-61 (1992).

---

[1] Oddly, on page 2 of its brief, Defendant argues, relying on an unpublished Northern District of Illinois opinion, that a 12(b)(1) motion is reviewed under the same standard as a Rule 12(b)(6) motion and that the court may look beyond the allegations of the complaint and view other submitted evidence. Thus, it appears, albeit confusingly, that Defendant may be asserting a substantive/factual challenge, as opposed to a facial challenge, pursuant to Rule 12(b)(1). However, the Seventh Circuit is clear that such a factual jurisdictional challenge is only triggered once a defendant proffers evidence that calls the court's jurisdiction into question. Commodity Trend Service v. CFTC, 149 F.3d 679, 685 (7th Cir. 1998). Here, Defendant fails to proffer ANY evidence, including any affidavits, which calls into question the validity of Plaintiff's injuries and this Court's subject matter jurisdiction that arises therefrom. This is wholly inconsistent with the requirements of Rule 12(b)(1) and Defendant's motion must be treated as a facial challenge to the adequacy of the language used in the Complaint. Regardless, it should be noted that in a Rule 12(b)(1) factual challenge it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. Garcia v. Copenhaver, Bell & Assoc., 104 F.3d 1256, 1260-1261 (11th Cir. 1997) citing Simanonok v. Simanonok, 787 F.2d 1517, 1519 (11th Cir.1986); cited with approval in Salah v. U.S., 11 Fed.Appx. 603, 604 (7th Cir. 2001). See also Federal Civil Rules Handbook, Rule 12(b)(1) commentary pg. 352, "the plaintiff must carry this burden by a preponderance of the evidence. The burden, however, is generally not a heavy one." Accordingly, just as in Finding King, Plaintiff would prevail on factual jurisdictional challenge.

**(1) NAA Plead An injury Cognizable By The IACA And Traceable To A.J. Wright**

NAA, an Illinois corporation, is an Indian arts and crafts organization under the IACA[2] and a manufacturer, retailer and distributor of authentic Indian-made products similar to those marketed and sold by Defendant. (Cmplt. ¶'s 3 and 28). Over the past thirteen years (and currently), NAA has operated numerous retail establishments in the Chicagoland area, including but not limited to in-line stores and kiosks in shopping malls such as Orland Square Shopping Center, Golf Mill Shopping Center, Hawthorne Shopping Center and Orland Oak Shopping Center, offering authentic Indian art and craft items made by artisans from over thirty different Indian tribes. In addition, NAA has marketed its authentic Indian-made products in other retail establishments in Illinois and at various art and craft shows in Illinois. Further still, NAA distributes catalogs and other advertising materials as well as operates an internet website offering for sale its authentic Indian products nationwide. (Cmplt. ¶ 28).

---

[2] Defendant's statements in its brief that NAA has filed at least eighty-one lawauits is exaggerated and incorrect as a significant number of those cases were re-filed cases or insurance litigation. More importantly, Defendant fails to point out that those cases were filed over a thirteen (13) year period. In any event, the number of other lawsuits is irrelevant as held by Judge Guzman in a recent opinion when, following briefing specifically on the issue, the court held that NAA does have standing as an Indian arts and crafts organization under the IACA (NAA v. Jose Maigua d/b/a Mother Earth Crafts, Case No. 07 C 0361, November 2, 2007 Memorandum Opinion)(Exhibit B). In doing so, Judge Guzman found that multiple suits do not preclude standing and recognized that "Congress expanded the entities entitled to sue in hopes of improving enforcement of the IACA *** to narrowly interpret standing under the IACA would go against Congress' intent to encourage more enforcement of the IACA. (See Sen. Rep. 106-452 at 1 ('the purpose of [amending the IACA] is to provide technical amendments to improve the enforcement of the IACA for the protection of the economic and cultural integrity of authentic arts and crafts, and for other purposes')." The fact that NAA has followed Congress' intent to enforce the IACA and has directly encountered the grave flood of counterfeit Indian products ravaging the Indian products market and, through litigation, has sought to protect its and other Indian artisans' economic and cultural rights does not undermine its standing as a Indian arts and crafts organization. Furthermore, NAA has been instrumental in getting injunctions requiring the use of a disclaimer that a product is not Indian-made in at least fifty (50) instances over thirteen years, including against nationwide retailers of Indian-style products such as J.C. Penney Co., Inc. and Wal-Mart. This has tremendously benefited Indian artisans and the Indian community as a whole and encourages the use of disclaimers in the Indian products marketplace generally. Finally, it is important to point out to the Court that in at least twelve other IACA

The IACA prohibits a person from directly or indirectly offering, displaying for sale or selling goods in a manner that falsely suggests it is Indian produced. Here, Plaintiff has alleged an actual, concrete, particularized injury arising directly from Defendant's wrongful conduct. The Complaint alleges that Defendant offered, displayed for sale and sold arts and crafts products, which were falsely suggested to be Indian-made, directly and indirectly to NAA and other consumers in Illinois since December of 2004 through at least eight specifically identified retail establishments owned and operated by A.J. Wright in the Chicagoland area. (Cmplt. ¶'s 10-17). NAA alleged that Defendant utilized falsely suggestive advertisements on traditional Indian products including the use of Indian symbols, lore and descriptive language such as "Indian" and "The American Indian Collection." (Cmplt. ¶'s 10-17; 19-23). Furthermore, NAA alleged that at five different A.J.Wright retail establishments in the Chicagoland area that authorized agents of the Defendant acting within the scope of their duties affirmatively misrepresented that Defendant's products were authentic Indian-made products. (Cmplt. ¶ 18). The Complaint also alleges that NAA was the purchaser of A.J. Wright products which were falsely suggested in their sale to be authentic Indian-made products when they were not. (Id. at ¶'s 10-17). Finally, the Complaint alleges that NAA is a competitor of A.J. Wright; that NAA advertises, markets and sells authentic Indian-made products similar to those advertised, offered, displayed and sold by A.J.Wright falsely suggested to be Indian products; that NAA advertises, markets and sells authentic Indian-made products through identical mediums as Defendant including retail establishments in the Chicagoland area; and that NAA has suffered competitive injuries as well as other damages as a result of A.J Wright's actions. (Id. at ¶'s 28-32).

---

cases in this district, courts have also recognized NAA's status as an Indian arts and crafts organization under the IACA.

Defendant's aforementioned actions of selling counterfeit Indian products into the same marketplace where NAA competes resulted in a suppression of sales from NAA to the Defendant (Cmplt. ¶ 28). Such a diversion of sales and business opportunities is a concrete and particularized harm to NAA caused by Defendant's actions (Id.). The products sold by Defendant contribute to the flood of imitation Indian-products that enter the market place for authentic Indian-made products thereby undermining that market in terms of price and injuring NAA who sells authentic products in that market. (Id.). Also, since NAA participates in that market it further suffers a concrete and particularized injury based upon the damage to its goodwill and reputation caused by the flood of counterfeit Indian products. (Id.). In addition, because NAA purchased products from Defendant that were counterfeit, NAA suffered a specific injury arising directly from the offer, display and sale of products from Defendant to NAA. (Id). Finally, it is likely that discovery will reveal that Defendant had a gross profit on all of the Indian products at issue from 2004 to 2007 which, under the IACA, establishes that Plaintiff has been injured and damaged. 25 U.S.C. 305(e)(a). Congress included a defendant's gross profit as damages and as a substitute for quantifying injury and damages based upon lost sales which is usually difficult to show.[3] Although NAA will seek statutory damages in lieu of treble damages, Defendant's gross profits on the Indian products at issue establish an injury-in-fact. Congress has found that each of the injuries discussed infra result from the offer, display and sale of counterfeit Indian products and are the injuries that the IACA is meant to remedy and prevent. (Sen. Rpt. 106-452).

---

[3] *See* Senate Report 106-452, pg. 4, "Plaintiffs who bring suit under the IACA, like other consumer protection cases, have difficulty in proving and quantifying damages. For example, lost or diminished sales attributable to the complained behavior, are difficult or impossible to prove." See also NAA v. Bundy-Howard, Inc., et. al, 168 F.Supp.2d 905, 914 (N.D.Ill 2001), "[T]here is no effective way to measure the loss of sales and potential growth – to ascertain the people who don't knock on doors or to identify specific person who do not re-order because of the existence of an infringer."

In addition, at trial, the owners of NAA, would be allowed to testify to the value of the business, competition between the parties, and the damage done to it by Defendant. *See* Mary Ellen Enterprises, Inc. v. Camex, Inc., 68 F.3d 1065, 1070 (8th Cir. 1995); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 902 (Fed.Cir. 1986); and Iris Arc v. S.S. Sarna, Inc., 621 F.Supp. 916 (E.D.N.Y. 1985). Also, following full discovery which is necessary to assemble the information for an expert, Plaintiff anticipates employing the services of a market share expert in order to determine NAA's injury and damages specifically attributable to Defendant. An accepted method for establishing injury to a plaintiff for lost profits is projecting market share which the plaintiff would have attained absent the anticompetitive activity and projecting plaintiff's profits accordingly. S*ee* Zenith Radio v. Hazeltine, 395 U.S. 100 (1969)(Supreme Court accepted use of market share analysis in establishing plaintiff's damages in regard to its foreclosure from the Canadian market.); *See also* BASF Corp. v. Old-World Trading, 41 F.3d 1081 (7th Cir. 1994) (Seventh Circuit recognized damages for competitive injury based on projection of lost sales using market share analysis). Such expert testimony has been accepted in similar IACA cases in this District and Plaintiff should be given the opportunity to complete full discovery and retain an expert in this action. NAA v. The Waldron Corporation, Case No. 01 C 2370, J. Conlon 5-29-2002 Memorandum Opinion.[4]

As set forth above, NAA is a direct competitor of A.J. Wright in the Indian arts and crafts market who suffered injuries traceable to the Defendant's offer, display and sale of similar

---

[4] Any additional arguments that NAA is required to provide detail regarding its damages or lost sales rings hollow because a plaintiff is not required to itemize its damages in its complaint or allege its damages in detail and with particularity. Avita v. Metropolitan Club of Chicago, Inc., 49 F.3d. 1219 (7th Cir. 1995); Everco Industries, Inc. v. O.E.M. Products, Inc., 63 F.R.D. 662 (N.D.Ill. 1974). NAA's interest in pursuing this claim is directly related to its injury-in-fact even though NAA is seeking statutory damages. As shown above, NAA has been injured by Defendant's actions and the fact that NAA is seeking statutory damages is irrelevant to the issue of standing.

Indian-style products which falsely suggested they were Indian-made. Clearly, taking the allegations set forth in the Complaint as true, Defendant has more than the required minimum notice regarding its violative conduct and the injuries suffered by NAA as a result of said conduct. This satisfies the Court's inquiry, especially given the light burden imposed upon Plaintiff in satisfying jurisdictional requirements.

### (2) A Favorable Ruling Will Redress NAA's Injuries

For the reasons stated above and incorporated herein, NAA has established that it has suffered an injury-in-fact which is traceable to the Defendant. Defendant makes the fallacious argument that NAA has failed to allege facts to suggest that its injuries were caused by A.J. Wright rather than by some defendant in another case. This argument is readily refuted because the Complaint specifies the violative products which were advertised, offered, display and sold by A.J. Wright on specific days at specific stores (Cmplt. ¶'s 10-18), not by some other defendant or business. The other filed cases involve completely different circumstances, products, advertising, locations and dates. Thus, the injuries alleged in the Complaint are fairly traceable to A.J. Wright.

Accordingly, a favorable ruling (including an injunction) would redress the competitive injuries caused by the Defendant's offer, display and sale of falsely suggestive Indian products.

### (3) Northern District Of Illinois Judges Have Held That Nearly Identical Pleadings Satisfy Article III Standing Requirements

The Complaint clearly alleges an actual, concrete, particularized injury suffered by NAA caused by Defendant's wrongful conduct. This alone meets the Article III injury-in-fact standing requirements and is sufficient to deny Defendant's Rule 12(b)(1) Motion. In other IACA causes of action in this District, numerous judges have rejected Rule 12(b)(1) challenges and upheld

subject matter jurisdiction based upon nearly identical allegations as present in this cause of action.

Recently, in NAA v. Finding King, this Court denied a similar Rule 12(b)(1) Motion to Dismiss opining:

> "It seems to me inconsistent with the goals of the Act to require some additional showing of standing in this context. Certainly Native American Arts can claim injury at least to the extent that the statute presumed that sales by non-Native Americans of goods that hold themselves out in this nature injure those alleged legitimate purveyors." See pg. 3-4 of 11-7-2007 transcript attached hereto as Exhibit A.

In addition, other judges in this district have also denied Rule 12(b)(1) motions. In NAA v. J C Penney, 5 F.Supp.2d 599 (N.D. Ill. 1998), the court, relying on the Supreme Court's decision in Lujan at 561, held that nearly identical factual allegations satisfied Article III standing requirements. In J.C. Penney, the defendant brought a Rule 12(b)(1) motion to dismiss contending that the complaint in that action did not establish Article III standing for NAA. The court rejected this argument holding:

> "NAA alleges a more substantial injury that it has already suffered in a particularized and concrete way: lost revenue and business opportunities as Penney's direct retail competitor. NAA claims that 'effect of this flood of imitation Indian products by defendant is to undercut the authentic Indian product market and NAA's sale and profits and business opportunities in several injurious ways. NAA pledges to prove that 'it is a direct retail competitor of Defendant selling similar authentic products. *** These general allegations are sufficient to encompass more specific claims about exactly how and to what extent Penney's sales undermined NAA's profits. Thus, the injuries NAA outlined in its brief are sufficiently concrete, particularized, and actual to meet the injury-in-fact prong." Id. at 602.[5]

---

[5] As pointed out by Judge Castillo in J.C. Penney, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations of injury embrace those specific facts that are necessary to support the claim *** In addition, the court may consider facts contained in NAA's memorandum in opposition to the motion to dismiss as long as they are consistent with the allegations in the complaint." Id. at 602 *citing* Lujan at 561; Dausch v. Rykse, 52 F.3d 1425 FN 3 (7th Cir. 1994); and Jrubec v. National R.R. Passenger Corp., 981 F.2d 962, 963-964 (7th Cir. 1992).

9

Furthermore, the court held that the injuries discussed above satisfied the requirements for causation and redressability. In doing so, the court opined:

> "NAA has met the remaining requirements of causation and redressability. NAA alleges that is was Penney's conduct in selling imitation Indian-style goods that caused NAA to lose sales and business opportunities. As such, NAA's injury is fairly traceable to Penney's offending conduct ***. As for redressability, the complaint plainly sets forth the relief requested-compensatory and punitive damages and injunctive relief-all of which the statute authorizes as relief to be paid to an aggrieved Indian arts and crafts organization such as NAA. Because NAA has sufficiently plead all three constitutional standing requirements, we have subject matter jurisdiction." Id. at 603.

In NAA v. Bundy-Howard, Inc., et. al, 168 F.Supp.2d 905 (N.D.Ill. 2001), the court similarly held that under nearly identical factual allegations as here that NAA was an "aggrieved" party under the IACA. Specifically, the court held:

> "As an 'Indian arts and crafts organization,' [NAA] is within a class authorized to sue under Section 305e(c). And the Complaint (which must be taken as true) alleges that Movants sold and marketed items in a manner falsely suggesting they were Indian-made when in fact they were not. Under any sensible reading of the term 'aggrieved,' [NAA] – competing in the market place by offering legitimate Indian-made products – fits comfortably within that term. Enough said." Id. at 911. (adopted in its entirety in NAA v. Giftmart Trading Post, et. al., Case No. 01 C 2892, 1-16-2002 Minute Order)(Exhibit C).

Finally, in NAA v. Duck House, Inc., Case No. 05 C 2176 (March 1, 2007 Memorandum Opinion at pg. 8)(Exhibit D), Judge Hart, citing to J.C. Penney at 602-603 and Bundy-Howard at 911, held:

> "Plaintiff alleges that it lost sales due to defendant's sale of similar products that, unlike plaintiff's products, were not authentic Indian products. That makes plaintiff an 'aggrieved' Indian arts and crafts organization entitled [to] could recover statutory damages. This is a concrete injury caused by defendant's alleged violative conduct and is redressable in this lawsuit."[6]

---

[6] *See also* NAA v. Nature's Gifts, Inc., 1999 U.S. Dist. Lexis 3687 *9 (N.D. Ill)(Judge Holderman holding that NAA satisfied requirements for standing based upon NAA's allegation that one of its injuries was caused by a reduction in sales which was caused by defendants marketing non-authentic products as authentic and selling them at a discounted price); Flodine v. State Farm Ins. Co., 2001 WL 204786 *9 (N.D.Ill.); NAA v. Hartford Casualty Ins. Co., et. al., 2004 WL 2065065 (N.D. Ill.); and NAA v. Hartford Casualty Ins. Co., et. al., 2006 WL 172194 (7th Cir.) wherein the courts determined that nearly identical IACA pleadings sufficiently alleged advertising injuries to trigger the insurers' duties to defend.

In a futile attempt to undermine NAA's Article III standing, Defendant incorrectly directs the Court's attention to NAA v. Specialty Merchandise Corporation, 2006 U.S. Dist. Lexis 65141 (C.D. California), asserting that Plaintiff's complaint in that case was dismissed with prejudice for lack of Article III standing. This is simple untrue. First, the opinion was based upon a pleading deficiency which the court allowed Plaintiff to later rectify by filing an amended complaint. That case was never dismissed with prejudice based upon the defendant's 12(b)(1) motion.[7] Second, the Central District of California recognized that the injury-in-fact elements asserted in the Complaint at issue here are sufficient, but were not clearly plead in that case. Third, the Central District of California's ruling is in direct conflict with six Northern District of Illinois judges, including this Court, who have previously held that NAA does satisfy Article III standing requirements based upon similar allegations of injury-in-fact as those set forth in that case. Lastly, following full briefing in *Finding King*, this Court considered Specialty Merchandise in ruling that NAA did have standing. Accordingly, this Court should not be misled by Defendant's inaccurate characterization of Specialty Merchandise and should follow its own previous ruling in Finding King and numerous other rulings in the Northern District of Illinois upholding NAA's Article III standing.

### III.    APPLICATION OF *BELL ATLANTIC V. TWOMBLY*

As its solitary attempt to distinguish this Court's previous ruling in Finding King (Defendant fails to address the other five rulings upholding standing) Defendant relies upon the Supreme Court's ruling in Bell Atlantic v. Twombly, 127 S.Ct. 1955 (2007), for an argument

---

[7] Unfortunately, in Finding King just as in this case, the defendant also misled the Court by arguing that the California action had been dismissed with prejudice per Rule 12(b)(1) which was repeated by the Court during the November 7, 2007 hearing. (See transcript pg. 3). With all due respect to the Court, this is incorrect.

11

that some form of heightened pleading standard was created which NAA now cannot satisfy. This argument is without merit.

As a preliminary issue regarding the applicability of Bell Atlantic, Defendant stated the following in its brief:

> "A.J. Wright acknowledges that in *Finding King* this Court rejected a motion to dismiss raising standing issues. However, the motion in *Finding King* was filed prior to the decision in *Bell Atlantic*, and the subsequent briefs did not address the clarified pleading standard from *Bell Atlantic* and how that would impact a 12(b)(1) motion." Def. Brief pg. 3, fn. 2.

Unfortunately, Defendant seemingly fails to make the simple observation that the Bell Atlantic opinion was rendered on May 21, 2008 while the Finding King ruling was rendered nearly six months later on November 7, 2008. Although the Bell Atlantic opinion was not discussed in any briefs in *Finding King*, it seems inappropriate to argue that this Court was not aware of a six month old Supreme Court ruling dictating a different standard of review on a Rule 12(b)(1) motion and, consequently, that this Court therefore applied an improper standard of review in rendering its opinion in Finding King. Plaintiff strongly disagrees with any such assertion that this Court applied an incorrect standard in Finding King.

Furthermore, there is no authority cited by Defendant that Bell Atlantic even applies to a Rule 12(b)(1) motion. Bell Atlantic dealt strictly with a Rule 12(b)(6) motion and Defendant's concedes in its secondary citation to Village of Riverdale v. 138th Street Joint Venture, 2007 WL 2893655 (N.D. Ill. Sept. 25, 2007) that the court "declined to expressly state whether *Bell Atlantic* would necessarily apply to a 12(b)(1) motion." (Def. Br. pgs. 2-3). This is an understatement because in Village of Riverdale Judge Coar expressly held contrary to Defendant's position opining:

> "[T]his Court does not accept Defendants' arguments that *** *Twombly* creates a higher hurdle to demonstrate Article III standing." Id. at *6.

12

As such, Defendant admittedly has provided this Court with no authority to apply <u>Bell Atlantic</u> to the pending 12(b)(1) motion and even its own citation contradicts such an application.[8]

Regardless, even if this Court did apply a <u>Bell Atlantic</u> plausibility standard, that standard of review is still easily satisfied by NAA allegations. The Seventh Circuit and judges in the Northern District Court of Illinois have held the following regarding the <u>Bell Atlantic</u> standard of review:

> "*Bell Atlantic* must not be overread. The Court denied 'requiring heightened fact pleading of specifics'; a complaint … does not need detailed factual allegations. A complaint must allege enough facts to state a claim to relief that is plausible on its face." <u>Limestone Development Corp. v. Village of Lemont, Illinois</u>, 520 F.3d 797, 803 (7th Cir. 2008).
>
> "District Court will determine whether the complaint contains 'enough factual matter (taken as true)' to provide the minimum notice of the plaintiff's claim that the Court believes a defendant is entitled to." <u>In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation</u>, 491 F.3d 638 (7th Cir. 2007) cited in <u>Village of Riverdale</u> at *5.
>
> "On its face, *Twombly* merely explains that a complaint with insufficient factual assertions to support a claim such that the court is required to supply factual assertions will not survive a 12(b)(6) motion to dismiss *** a complaint need only describe the claim in enough detail to give the defendant fair notice of the claim … is and the grounds upon which it rests *** the Seventh Circuit has explained that the Supreme Court is merely instructing that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled to under Rule 8. <u>Village of Riverdale</u> at *5 citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Airborne Beepers & Video, Inc. v AT & T Mobility LLC</u>, 499 F.3d 663 (7th Cir. 2007); and <u>In re Ocwen</u> at 649.

According to the Seventh Circuit, if the Court applies <u>Bell Atlantic</u>, NAA's Complaint must provide enough factual matter (taken as true) that A.J. Wright has minimum notice as to Plaintiff's claims. Clearly, as set forth infra, NAA's Complaint sufficiently alleges the nature of

---

[8] In addition, there is a question whether <u>Bell Atlantic</u> even applies outside the context of antitrust actions. In <u>Limestone Development Corp. v. Village of Lemont, Illinois</u>, 520 F.3d 797, 803 (7th Cir. 2008), Judge Posner states, "it is true that the narrowest holding in *Bell Atlantic* is merely that an antitrust complaint charging an agreement between firms not to compete must contain enough factual matter (taken as true) to suggest that an agreement was made."

13

its IACA claims against A.J. Wright including the exact dates and locations of the alleged violations (Cmplt. ¶'s 10-17); the exact dates and locations where verbal misrepresentations were made by Defendant's authorized agents stating that the products were Indian-made (Cmplt. ¶ 18); the manner of advertising on traditional Indian products which falsely suggested that the products were authentic Indian-made (Cmplt. ¶'s 9-17 and 19-23); and the nature of NAA's injuries caused by Defendant's violative conduct including the offer, display and sale of similar Indian-style products in the same competitive areas (Cmplt. ¶'s 28-32).

Even under the strictest application of Bell Atlantic, NAA's Complaint, just as in Finding King, provides minimum notice of Plaintiff's claims and the plausibility of the damage allegations are readily apparent from the detailed allegations in the Complaint. This is further enhanced by Congress' recognition that such damages flow from the prohibited conduct which was the reason for the 2000 Amendment to the IACA. This Court acknowledged as such in *Finding King* stating "it seems inconsistent to me with the goals of the Act to require some additional showing of standing in this context." (11-7-2007 *Finding King* Transcript pg. 4). Accordingly, NAA has satisfied the requirements for Article III standing requirements and, consequently, this Court has subject matter jurisdiction.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff has satisfied all relevant pleading requirements and this Honorable Court should deny Defendant A.J. Wright's Motion to Dismiss pursuant to Fed.R.Civ.Pro. 12(b)(1).

Respectfully submitted,

/s/ Michael P. Mullen_____
One of the attorneys for Plaintiff

Michael Patrick Mullen
Scott M. Kolosso
MULLEN & FOSTER
203 N. Wabash Ave., Ste. 2300
Chicago, IL 60601