```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4   NATIVE AMERICAN ARTS, INC.,   )
                                   )
 5             Plaintiff,          )   Docket No. 06 C 6143
                                   )
 6        vs.                      )
                                   )
 7   FINDING KING,                 )   Chicago, Illinois
                                   )   November 7, 2007
 8             Defendant.          )   8:55 a.m.

 9
               TRANSCRIPT OF PROCEEDINGS - Motion
10          BEFORE THE HONORABLE REBECCA R. PALLMEYER

11
     APPEARANCES:
12

13   For the Plaintiff:       MULLEN & FOSTER
                              BY:  MR. SCOTT M. KOLOSSO
14                            203 North Wabash Avenue, Suite 2300
                              Chicago, Illinois  60601
15

16   For the Defendant:       KNIGHT HOPPE KURNIK & KNIGHT, LTD.
                              BY:  MS. KRISTA E. OSWALD
17                            2860 River Road, Suite 400
                              Des Plaines, Illinois  60018
18

19

20

21

22   Court Reporter:          FRANCES WARD, CSR, RPR, FCRR
                              Official Court Reporter
23                            219 S. Dearborn Street, Suite 2118
                              Chicago, Illinois  60604
24                            (312) 435-5561
                              frances_ward@ilnd.uscourts.gov
25
```

```
 1              THE CLERK:  06 C 6143, Native American Arts versus
 2     King on a motion.
 3              MR. KOLOSSO:  Good morning, your Honor.  Scott
 4     Kolosso on behalf of the plaintiff, Native American Arts.
 5              MS. OSWALD:  Good morning, your Honor.  Krista
 6     Oswald on behalf of defendant.
 7              THE COURT:  Good morning.
 8              We are here on two matters.  There is the pending
 9     motion to dismiss, which was set for 9:00 o'clock today, but
10     also we now have the plaintiff's motion to make a correction
11     in what they believe to be a misstatement in the defendant's
12     reply.
13              What's the defendant's position on that motion?
14              MS. OSWALD:  Your Honor, I believe that there was
15     no misstatement made.  There were two experts that were
16     involved in the *Waldron* case that was cited.  One of the
17     experts was barred.  One was not.  I don't know if it's just
18     a problem with the wording, but there was no
19     misrepresentation made there.
20              MR. KOLOSSO:  The concern here is that in
21     defendant's reply brief they had used -- they had stated that
22     a market share expert, testimony had been denied in that
23     other case.  That's untrue.  An expert who had done a survey
24     had been denied.
25              We just wanted to clarify for the Court that the
```

1  expert that plaintiff is talking about in its response brief,
2  which is a market share expert, was not denied in that other
3  case. In fact, a motion *in limine* to exclude that testimony
4  was denied by Judge Conlon.
5      MS. OSWALD: Your Honor, if you look at the exhibit
6  that we actually attached to our reply, it is the motion *in
7  limine* that's denying the testimony of the expert that was in
8  fact barred from testifying. It was not the expert that the
9  plaintiff is referring to.
10     THE COURT: All right. So we agree, in other
11 words, that the market share expert's testimony was
12 considered by Judge Conlon.
13     MS. OSWALD: Correct.
14     THE COURT: What was the outcome of that case?
15     MR. KOLOSSO: It ended up going to trial, your
16 Honor. There was a verdict against the plaintiff in that
17 case.
18     THE COURT: All right. But in any case, the
19 plaintiff was deemed to have standing.
20     MR. KOLOSSO: That's correct, your Honor.
21     THE COURT: I will tell you I have had a few of
22 these cases brought by Native American Arts against various
23 retailers. The standing issue has not been raised before.
24 So that's kind of a new one for me. And I know there is at
25 least this one case in California where the court dismissed

1  the case for that reason.
2       It seems to me inconsistent with the goals of the
3  Act to require some additional showing of standing in this
4  context.  Certainly Native American Arts can claim injury at
5  least to the extent that the statute presumed that sales by
6  non-Native Americans of goods that hold themselves out in
7  this nature injure those alleged legitimate purveyors.
8       The other argument, though, in this case is the
9  venue argument.  It's the defendant's position, as I
10 understand it, that all of the witnesses, every one of them,
11 are in Arizona.
12      I have seen the plaintiff's response.  I don't
13 know.  Do you want to elaborate on that?
14      MR. KOLOSSO:  Your Honor --
15      THE COURT:  Either side?
16      MR. KOLOSSO:  I would just briefly like to say in
17 defendant's affidavit they are listing numerous --
18      THE COURT:  Dozen of witnesses.
19      MR. KOLOSSO:  -- unidentified witnesses.
20      THE COURT:  Right, that I can't imagine we would
21 call.
22      MR. KOLOSSO:  No, we don't intend to, your Honor.
23      What we look at as potential witnesses would be
24 Native American Arts' president, owners in the Northern
25 District.  There is also customers that defendant sold to in

1  the Northern District. I believe we have identified 24 to
2  date. Those are potential witnesses that would also be
3  located in this venue.
4       The only -- we haven't gotten through discovery
5  enough to really evaluate the hierarchy of defendant's
6  company, but we estimate probably only one or two witnesses
7  would be deposed. We could do that telephonically or
8  whatnot. I believe the inconvenience to the parties would be
9  minimal in that instance.
10       MS. OSWALD: All of the hierarchy of Finding King
11  company is in Arizona. We did provide quite an elaborate
12  list of employees. And I feel that several of those
13  employees will need to be deposed in this case.
14       They are alleging that these items were displayed
15  on the Internet for sale. And there are several employees
16  that are involved in providing these items for sale on the
17  Internet. It's not just the president of the company.
18       THE COURT: Sure, but why would we need witnesses
19  to establish whether something was displayed on the Internet?
20       I did see your list of witnesses. My question
21  immediately was, why would we need to hear from all these
22  people?
23       It's a fairly straightforward question. Were these
24  materials displayed on the Internet, or weren't they? I
25  can't imagine we are going to be hearing a lot of testimony

1  on that.  We will probably just see some photos and images.
2          And then the next question is, do they improperly
3  hold themselves out as created by Native Americans when they
4  are not?
5          MS. OSWALD:  That's the issue, your Honor, because
6  the actual advertisements are created by various individuals
7  of the company.  And the specific wording is created by those
8  individuals.  Whether they choose to use the word, for
9  example, "Native American" or "Indian," it's that specific
10 individual that makes that decision.  It is not the decision
11 of the president of the company.
12         Therefore, I feel that the ultimate question of
13 whether the item is being held out to be Native American
14 made, the testimony of the individual that wrote the actual
15 advertisement would be relevant.
16         THE COURT:  Well, no.  What will be relevant is,
17 what does the advertisement say?  It doesn't really matter
18 who wrote it.
19         MR. KOLOSSO:  We don't intend to depose every
20 individual who might have wrote a tag, your Honor.  That's
21 unnecessary.
22         THE COURT:  I am inclined to deny the motion to
23 dismiss.  I will certainly take up issues that might be -- I
24 will do this without prejudice.  If it turns out that as
25 discovery gets underway, it really becomes very difficult to

1  proceed here, I will certainly reconsider the matter of
2  venue.
3          All right. Now remind me whether we have -- I
4  think it's just a motion. I guess we need to set a date for
5  defendant's answer. Am I wrong? Has one been filed? I
6  don't think so.
7          MR. KOLOSSO: I don't believe so, your Honor.
8          THE COURT: I don't think so. All right. So I am
9  going to direct that the defendant answer within 21 days.
10         And let's set a Rule 16 conference to schedule
11 discovery about 14 days after that. So today is the 7th.
12 28th for an answer. And why don't we set our Rule 16
13 conference for December 12th at 9:00 o'clock.
14         MR. KOLOSSO: Just so the Court is aware, we had
15 filed a planning meeting report back in March. I am not sure
16 if the Court recalls that.
17         THE COURT: I do, but I am not sure -- it seems to
18 me the dates will probably have to be changed at this point
19 given the delay in getting a ruling from me.
20         MR. KOLOSSO: Most likely.
21         THE COURT: So I am going to suggest that you
22 provide amended dates.
23         All right. I will see you on the 12th.
24         MS. OSWALD: Thank you, your Honor.
25         MR. KOLOSSO: Thank you.

1       THE COURT: Thank you.

2             * * * * *

3 I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

4

5 F_____*Frances Ward*_____ _November 29_, 2007.
Official Court Reporter