IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIVE AMERICAN ARTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 07 C 361 |
| | ) | |
| JOSE MAIGUA D/B/A MOTHER EARTH CRAFTS, | ) | Judge Ronald A. Guzmán |
| | ) | |
| Defendant. | ) | |

### ORDER

Native American Arts, Inc. ("NAA") has sued Jose Maigua for violation of the Indian Arts and Crafts Act ("IACA"), 25 U.S.C. § 305e (2006). During discovery, Maigua issued subpoenas to various banks asking for NAA's financial information. (Pl.'s Mot. Protective Order Quashing Subpoenas ¶ 5.) NAA moved for a protective order to quash the subpoenas and for sanctions. (Id.) For the reasons set forth below, the Court grants the motion to quash and denies the motion for sanctions.

### Facts

Maigua argues that NAA does not have statutory standing to sue under the IACA, which expressly gives standing to an Indian arts and crafts organization. (Def.'s Mem. Issue Statutory Interpretation 14-15.) Maigua opines that NAA's primary purpose is litigation, not marketing arts and crafts, and therefore NAA does not qualify as an Indian arts and crafts organization under the IACA. (Id.) Maigua sought records from financial institutions to prove that most of NAA's income was generated through litigation, not from the sale of Indian arts and crafts.

1

(6/21/07 Tr. Proceedings 8:2-9:14.) In order to determine whether such financial discovery would affect NAA's statutory standing, the Court ordered the parties to brief the issue. (*Id.* at 17:16-17:21.)

### Discussion

The IACA provides a private cause of action against "a person who, directly or indirectly, offers or displays for sale or sells a good ... in a manner that falsely suggests it is Indian produced...." 25 U.S.C. § 305e(a). If successful, the NAA may recover either treble damages or statutory damages of at least $1,000.00 a day for each day the offending goods continue to be displayed. *Id.* § 305e(a)(2). Initially, the IACA permitted only the Attorney General or an Indian tribe to bring an action on behalf of an Indian tribe, Indian artisan, or Indian arts and crafts organization. *Id.* § 305e(c)(1) (2000). However, Congress amended the IACA to allow an Indian arts and crafts organization or an individual Indian to bring suit directly. Indian Arts & Crafts Enforcement Act of 2000, Pub. L. 106-497, § 2, Nov. 9, 2000, 114 Stat. 2219 (2000). Congress expanded the entities entitled to sue in hopes of improving enforcement of the IACA. S. Rep. No. 106-452, at 1 (2000).

Under the IACA, an Indian arts and crafts organization is defined as "any legally established arts and crafts marketing organization composed of members of Indian tribes." 25 U.S.C. § 305e(d)(4). Maigua asks the Court to interpret this definition as requiring an Indian arts and crafts organization to have the *primary purpose* of marketing Indian arts and crafts. If interpreted as such, NAA's financial records might be relevant to prove that NAA spends most of its time and derives most of its profits from litigation, not marketing.

When interpreting a statute, the starting point is the language of the statute itself. *United*

2

*States v. Turkette*, 452 U.S. 576, 580 (1981). The plain language of the statute is conclusive, and when the text is unambiguous resort to legislative history is impermissible. *Holder v. Hall*, 512 U.S. 874, 932 n.28 (1994). "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991).

The text of the IACA states: "A civil action . . . may be commenced . . . by an Indian arts and crafts organization on behalf of itself." 25 U.S.C. § 305e(c)(1)(c). The act later defines "Indian arts and crafts organization" as "any legally established arts and crafts marketing organization composed of members of Indian tribes." *Id.* § 305e(d)(4).

Thus, in order to have standing as an Indian arts and crafts organization, an entity must be: (1) legally established, (2) an arts and crafts marketing organization, and (3) composed of members of Indian tribes, as defined in the statute. The plain meaning of an arts and crafts marketing organization is an organization that is involved in "the act of buying or selling" arts and crafts. Webster's College Dictionary 831 (Random House 1995). The statute imposes no other obligations. Thus inquiry into the legislative intent is improper.[1]

Maigua asks the court to interpret "arts and crafts marketing organization" to mean the organization's primary purpose must be marketing Indian arts and crafts. (Def.'s Mem. Issue Stat. Interpretation 2.) However, the cases Maigua cites are unconvincing and different from this

---

[1] Even if the Court were to consider the statutory text to be ambiguous, which it does not, the legislative history supports granting NAA standing to sue under the IACA. Congress broadened standing to include Indian arts and crafts organizations and individual Indians in order to "encourage greater enforcement of the Act." S. Rep. 106-452, at 4. Thus, even if NAA were to derive a substantial income through litigation, it does so by enforcement of the IACA, which is Congress' express purpose.

3

case. First, Maigua cites to several cases arising under the Federal Trade Commission ("FTC") Act. *Cal. Dental Ass'n v. FTC*, 526 U.S. 756 (1999); *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006); *FTC v. Nat'l Comm'n on Egg Nutrition*, 517 F.2d 485 (7th Cir. 1975). In those cases, the FTC sought to enjoin an organization from practicing what the FTC deemed to be unfair trade practices. The organizations, seeking to avoid the FTC's enforcement, claimed they were not the types of entities that fell within the FTC's jurisdiction. In each case, the court disagreed.

In *California Dental Association*, a not-for-profit professional association claimed that the FTC had no jurisdiction over it because not-for-profit organizations were excluded from the FTC's statutory jurisdiction. *Cal. Dental Ass'n*, 526 U.S. at 765-56. The Court, however, looked to the entity's actual activities to determine whether it fell under the FTC's jurisdiction, which included "any company, . . . which is organized to carry on business for . . . [the profit] of its members." *Id.* Because some of the association's activities profited its members, the association was subject to the FTC's jurisdiction. *Id.* The Court refused to apply "some threshold percentage of activity for this purpose" or even to require "a substantial part of the nonprofit entity's total activities" be directed toward the profits of its members. *Id.* at 766. This case does not help Maigua. After the Court found that some of the association's activities profited its members, it held that the association did fall under the FTC's jurisdiction. If the court applies *California Dental* to this case, NAA need only show some marketing activities, and not "some threshold percentage" of marketing activities, in order to qualify as an Indian arts and crafts organization. *Id.*

Similarly, *Verity International* also does not support Maigua's position. In that case, Verity International claimed the FTC could not exercise jurisdiction over it because Verity was

licensed as a common carrier, which was exempted from the FTC Act. *Verity Int'l, Ltd*, 443 F.3d at 56. The term "common carrier" was undefined in the FTC Act, so the court looked to the common law understanding of what constituted a common carrier at the time Congress enacted the provision. *Id.* at 57-58. After determining the criteria for a common carrier, the court looked at Verity International's actual activities and noted that it fulfilled *none* of the requisite criteria; thus Verity International was not a common carrier and was subject to the FTC's jurisdiction. *Id.* at 58-59. Because Verity International did not conduct any of the activities of a common carrier, the court did not address the question of whether Verity International needed to show some threshold percentage of common carrier activity in order to qualify as one. *Verity International* does not help Maigua because Maigua does not allege that NAA conducts *no* marketing activities. Maigua instead alleges that NAA's marketing activities are secondary to its litigation efforts and seeks that this Court require a certain threshold percentage of marketing activity before qualifying as one under the IACA.

Finally, Maigua's analogy to tax-exempt status under the Internal Revenue Code ("IRC") is inapplicable to this case for two main reasons. First, the language in the IRC repeatedly limits tax exempt status to entities "organized and operated exclusively for" certain enumerated charitable purposes and allows "no part of the net earnings [to inure] to the benefit of any private shareholder or individual." 26 U.S.C. § 501(c)(3) (2006). The IACA has no comparable language. Second, courts narrowly construe the tax exemption. *IHC Health Plans, Inc. v. CIR*, 325 F.3d 1188, 1195 (10th Cir. 2003). To narrowly interpret standing under the IACA would go against Congress' intent to encourage more enforcement of that IACA. *See* S. Rep. 106-452, at 1 ("The purpose of [amending the IACA] is to provide technical amendments to improve the

5

enforcement of the IACA for the protection of the economic and cultural integrity of authentic Indian arts and crafts, and for other purposes.").

Maigua also argues that NAA should not have statutory standing to sue because NAA's alleged practice of delaying filing suit for years after it first notices a violation to increase potential damages subverts the purpose of the statute. (Def.'s Mem. Issue Statutory Interpretation 2.) The delay in filing suit, Maigua argues, actually harms the Indian artisans the IACA is supposed to protect by allowing inauthentic products to remain on the market. (*Id.*) Even if Maigua's allegation is true and Congress did not foresee this consequence, that is not sufficient to ignore the statute's plain meaning. *Union Bank*, 502 U.S. at 158. Congress, and not the Court, is the proper place to petition for an amendment of the statute.[2]

However, the Court denies NAA's motion for sanctions. It does not appear that the subpoenas were issued with the intent to burden or harass NAA, but rather were based on Maigua's good faith argument based on his interpretation of the IACA.

### Conclusion

For the reasons provided above, the Court grants NAA's motion to quash subpoenas [doc. no. 23-1]. The Court denies NAA's motion for sanctions [doc. no. 23-2].

SO ORDERED.   ENTERED: 11/2/07

HON. RONALD A. GUZMAN
United States District Judge

---

[2] Plaintiff's intentional delay in bringing suit for the sole purpose of amassing damages might be the basis for a defense of laches, or failure to mitigate damages. The Court makes no ruling in this regard as the issue is not before the Court at this time.