IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


NATIVE AMERICAN ARTS, INC.,        )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        No. 05 C 2176
                                   )
DUCK HOUSE, INC.,                  )
                                   )
                Defendant.         )


## MEMORANDUM OPINION AND ORDER

        Plaintiff Native American Arts, Inc. ("NAA") is an
"Indian arts and craft organization."  See 25 U.S.C. § 305e(d)(4)
("any legally established arts and crafts marketing organization
composed of members of Indian tribes").  Plaintiff alleges that
defendant Duck House, Inc. ("defendant" or "Duck House") has
violated Indian Arts and Crafts Acts (collectively "IACA")
codified at 25 U.S.C. §§ 305-10.  Plaintiff alleges that
defendant has violated the IACA by directly or indirectly
advertising, marketing, distributing, and selling goods,
including Indian-clothed dolls, that are falsely suggested to be
Indian products or Indian produced.  Count IV of the Amended
Complaint[1] is a claim under the IACA.  Count V is a state law

_____

        [1]The original Complaint named six defendants, including
Duck House.  Plaintiff settled with or otherwise dismissed four
of the defendants.  Plaintiff then filed an Amended Complaint

claim against defendant based on indemnity and related theories. In Count V plaintiff alleges that The Swiss Colony, Inc. ("Swiss Colony") violated the IACA by selling products supplied by Duck House and that Swiss Colony settled the claims that NAA brought against it in the original Complaint. It is further alleged that Duck House agreed to indemnify Swiss Colony for any damages incurred as a result of selling Duck House's products. As part of Swiss Colony's settlement with plaintiff, Swiss Colony allegedly assigned to plaintiff any indemnity rights and related claims Swiss Colony had as against Duck House for the sale of the allegedly IACA-violating products supplied by Duck House. Plaintiff seeks compensatory damages and an injunction.

Presently pending is the motion to dismiss of Duck House, including the incorporated arguments originally raised by

---

naming only the two remaining defendants, Duck House and Timeless Collections, Inc. Recently, plaintiff settled with Timeless. Counts I through III of the Amended Complaint were against Timeless. Duck House is the only remaining defendant. Counts IV and V are the only counts pertaining to Duck House. Duck House had moved to dismiss the original Complaint, but that motion became moot when the Complaint was amended. Duck House subsequently moved to dismiss the Amended Complaint. Shortly after that motion became fully briefed, however, Duck House was permitted to join in a motion to dismiss filed by Timeless. Ruling on Duck House's initial motion to dismiss the Amended Complaint was held in abeyance while Timeless's motion was being briefed. Briefing of Timeless's motion was repeatedly delayed because of ongoing settlement negotiations. After Timeless settled, Duck House was recently granted leave to file a reply supporting the arguments originally raised by Timeless and joined in by Duck House. Duck House's motion to dismiss is finally ripe for resolution.

Timeless. Duck House contends that plaintiff lacks standing to bring the IACA claim because plaintiff has not suffered any injury caused by defendant. Even if plaintiff has standing, defendant contends that the IACA claim is not pleaded with sufficient particularity to satisfy Fed. R. Civ. P. 9(b). Defendant also contends plaintiff cannot base any claims on "advertising injury." As to the IACA claim, defendant contends the statute that permits plaintiff to bring a damages action in its own name may not be relied upon because it is unconstitutional in that it violates equal protection by not permitting non-Indian individuals and organizations to bring such claims. Additionally, defendant contends the Count V supplemental state law claim should be dismissed if the Count IV federal claim is dismissed. On the merits, defendant contends plaintiff has insufficiently alleged a basis for indemnity liability.

Section 305e(a) of Title 25 provides for a cause of action "against a person who, directly or indirectly, offers or displays for sale or sells a good . . . in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and craft organization." The person seeking relief may obtain injunctive or equitable relief, id. § 305e(a)(1), and recover the greater of treble damages (which includes gross profits of the offending

party) or statutory damages for each "aggrieved" party of $1,000 per day for each day the offer or display for sale or sale continues, id. 305e(a)(2). Punitive damages, costs, and attorney fees may also be recovered. Id. § 305e(b). Such a cause of action may only be pursued by those listed in § 305(c), which are the Attorney General, an Indian tribe, an individual member of an Indian tribe, or an Indian arts and crafts organization.

Plaintiff is seeking statutory damages; it is not seeking actual damages. Defendant contends plaintiff does not have standing to bring a claim because it cannot show that it suffered any actual injury. Standing is a jurisdictional requirement. For standing to be satisfied, plaintiff must establish: "(1) [it] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004) (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81 (2000)); Voss v. Waste Management of Illinois, Inc., 2006 WL 1235786 *2-3 (N.D. Ill. May 4, 2006); NAA v. J.C. Penney Co., 5 F. Supp. 2d 599, 601-02 (N.D. Ill. 1998). At the pleading stage, the plaintiff need only allege facts adequate to support standing.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992);

<u>Department of Commerce v. United States House of Representatives</u>,

525 U.S. 316, 329 (1999); <u>Lehn</u>, 364 F.3d at 871; <u>Voss</u>, 2006 WL

1235786 at *3; <u>Penney</u>, 5 F. Supp. 2d at 602.  No special pleading

standards apply to standing.  <u>Lujan</u>, 504 U.S. at 561.  "At the

pleading stage, general factual allegations of injury resulting

from the defendant's conduct may suffice, for on a motion to

dismiss we 'presum[e] that general allegations embrace those

specific facts that are necessary to support the claim.'"  <u>Id.</u>

(quoting <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 889

(1990)).  <u>Accord</u> <u>Penney</u>, 5 F. Supp. 2d at 602.  Although

defendant repeatedly refers to plaintiff's failure to provide

evidence supporting standing, at this stage of the litigation,

"questions of proof are premature."  <u>Lehn</u>, 364 F.3d at 871.  <u>See</u>

<u>also</u> <u>Department of Commerce</u>, 525 U.S. at 329 (unlike the pleading

stage where allegations supporting standing are sufficient, on

summary judgment the plaintiff must present sufficient evidence

to support a genuine issue of material fact).  In the guise of a

motion to dismiss based on standing, defendant cannot require

that plaintiff be able to prove the merits of its claim at this

stage of the litigation.

     In the Amended Complaint, plaintiff alleges that

defendant distributed and sold dolls that are falsely suggested

to be Indian products.  Defendant contends that its catalogs and

other literature, and labeling made clear that it was not
claiming that the dolls were Indian products.  On the motion
to dismiss, however, plaintiff's allegations must be taken as
true.  Plaintiff has alleged some of the misrepresentations
are contained in catalogs.  Plaintiff also alleges the
misrepresentations are contained in brochures, the certificates
of authenticity provided with dolls and other related items, and
were made at trade shows.  The allegations in the Amended
Complaint do not conclusively establish defendant's contention
that it did not, in any advertising or distribution of its
products, fail to make clear that the products were not Indian
products.  Attached to defendant's motion to dismiss are copies
of a catalog and web pages and pictures of products.  Even if
these could be considered on a motion to dismiss,[2] they do not
conclusively establish that defendant's advertising, marketing,
and distribution always made clear that its products were not
represented to be authentic, Indian-produced items.  Plaintiff
has not pleaded itself out of court by supplying irrefutable
facts contradicting its allegations that defendant falsely

_____

[2]When documents are alleged to be central to a claim, the
actual documents may be considered on a motion to dismiss even
if they were not attached to the complaint.  See Rosenblum v.
Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco
Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997);
Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d
429, 431 (7th Cir. 1993); Bishop v. PCS Administration (USA),
Inc., 2006 WL 1460032 *2 (N.D. Ill. May 23, 2006).

suggested the dolls were Indian products.  On the motion to

dismiss, it is taken as true that defendant sold and distributed

products that were falsely suggested to be Indian products as

that term is used in the IACA.

Plaintiff alleges that it actually purchased some of the

Duck House dolls that allegedly violate the IACA.  Plaintiff also

alleges that it is a competitor of defendant and that it suffered

"competitive injuries" in that it sells, markets, and advertises

authentic Indian products that are similar to inauthentic

products sold by defendant.  Plaintiff also alleges that it has

suffered "advertising injury" in that defendant has copied and

misappropriated plaintiff's advertising ideas and style of doing

business.  Plaintiff also alleges that it suffered "advertising

injury" through "Duck House's infringement of title by falsely

suggesting and misrepresenting that their [sic] products were

Indian made" and by "infringing upon NAA's slogan."

For purposes of resolving the issue of standing, it

is unnecessary to determine exactly what plaintiff means by

"advertising injury"[3] nor whether such injuries are cognizable

_____

[3]"Advertising injury" is a term that is used to define
coverage or exclusions in some insurance policies.  See, e.g.,
NAA v. Hartford Casualty Insurance Co., 435 F.3d 729, 732
(7th Cir. 2006) (policy defined "advertising injury" as an
advertisement that:  slanders, libels, or disparages a person
or the person's goods, products, or services; invades a person's
privacy; copies a person's advertising ideas or style; or
infringes a person's copyright, slogan, or title of a literary
or artistic work); Acme United Corp. v. St. Paul Fire & Marine

under the IACA.  Plaintiff also alleges what it calls
"competitive injuries."  Plaintiff alleges that it lost sales
due to defendant's sale of similar products that, unlike
plaintiff's products, were not authentic Indian products.
That makes plaintiff an "aggrieved" Indian arts and craft
organization entitled that could recover statutory damages.
See 25 U.S.C. § 305e(a)(2)(B); NAA v. Bundy-Howard, Inc.,
168 F. Supp. 2d 905, 911 (N.D. Ill. 2001).  This is a concrete
injury caused by defendant's alleged violative conduct and is
redressable in this lawsuit.  See Penney, 5 F. Supp. 2d at
602-03; Bundy-Howard, 168 F. Supp. 2d at 911.  There is no
requirement that plaintiff allege its damages or the causal
connection between the violations and injuries with any
specificity.  Even if Fed. R. Civ. P. 9(b) applies to plaintiff's
IACA claim, Rule 9(b) only requires that the circumstances of
fraud be alleged with particularity; Rule 9(b) does not require
that resulting injury or damages be pleaded with particularity.
See Fed. R. Civ. P. 9(b), (g); Association Benefit Services,
Inc. v. Advanceps Holding Corp., 2004 WL 2101928 *2 (N.D. Ill.
Sept. 21, 2004); Indiana Bell Telephone Co. v. Ward, 2002 WL
32067296 *3 (S.D. Ind. Dec. 6, 2002); Smith v. Short Term Loans,

Insurance Co., 2007 WL 186247 *2 (7th Cir. Jan. 9, 2007)
(unpublished order) (policy defined "advertising injury" as
injury caused by, inter alia, "material that disparages the
business, premises, products, services, work, or completed work
of others").

2001 WL 127303 *6 (N.D. Ill. Feb. 14, 2001); Williams v. Sabin, 884 F. Supp. 294, 297 (N.D. Ill. 1995). At this stage of the proceedings, the constitutional requirements for standing are satisfied.[4]

Defendant also contends that prudential limitations on standing should be applied to find that plaintiff lacks standing. Those arguments, however, depend on defendant's contention that plaintiff has not adequately alleged any injury. As discussed above, plaintiff has alleged an injury to its business. There is no sufficient basis for exercising prudential standing limitations. Plaintiff's claims against Duck House will not be dismissed based on lack of standing.

Defendant contends Count IV is deficient because it does not satisfy the particularity requirement of Rule 9(b). Liability under § 305e requires that the defendant "falsely suggest" products are Indian made, but does not require

---

[4]Although plaintiff indicates that it only intends to pursue statutory damages, it has alleged that actual damages to plaintiff's business resulted from the IACA violations. Therefore, it is unnecessary at this time to consider whether the allegation that plaintiff purchased products of defendant that violated the IACA would, by itself, be sufficient to support standing to pursue statutory damages. Cf. Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998) (plaintiff has standing to pursue statutory damages under the Fair Debt Collection Practices Act if plaintiff received a communication violating that Act even if the communication did not cause an actual injury); Villareal v. Snow, 1996 WL 28282 *3 (N.D. Ill. Jan. 19, 1996) (plaintiff can have standing to pursue Truth In Lending Act statutory damages even if plaintiff did not suffer actual injury).

intentional misrepresentations.  <u>See</u> <u>NAA v. Village Originals,</u>
<u>Inc.</u>, 25 F. Supp. 2d 876, 881 (N.D. Ill. 1998); <u>Ho-Chunk ex rel.</u>
<u>NAA v. Nature's Gifts, Inc.</u>, 1999 WL 169319 *5-6 (N.D. Ill.
March 19, 1999); <u>NAA v. Earthdweller, Ltd.</u>, 2002 WL 1173513 *5
(N.D. Ill. May 31, 2002); <u>Flodine v. State Farm Insurance Co.</u>,
2001 WL 204786 *12 (N.D. Ill. March 1, 2001); <u>Jewelers Mutual</u>
<u>Insurance v. Milne Jewelry Co.</u>, 2006 WL 3716112 *3 (D. Utah
Dec. 14, 2006).  Plaintiff does not allege that the false
suggestion of Indian products was intentional nor does it
seek punitive damages based on any intentional misconduct.
Rule 9(b) does not apply to allegations of negligent
misrepresenta-tion, which, like a § 305e violation, do not
require a showing of scienter.  <u>Tricontinental Industries,</u>
<u>Ltd. v. PricewaterhouseCoopers, LLP</u>, ___ F.3d ___, 2007 WL 102985
*7 (7th Cir. Jan. 17, 2007); <u>Banta Corp. v. Honeywell Inter-</u>
<u>national, Inc.</u>, 2006 WL 801008 *1 (E.D. Wis. March 24, 2006).
Nevertheless, cases in this district have applied Rule 9(b) to
IACA claims, <u>see, e.g.</u>, <u>NAA v. Doll Market, Inc.</u>, 2007 WL 257640
*1 (N.D. Ill. Jan. 25, 2007); <u>NAA v. Aguino</u>, 2004 WL 2434260 *2
(N.D. Ill. Oct. 29, 2004); <u>NAA v. Earth Dweller, Ltd.</u>, 2001
WL 910394 *2 (N.D. Ill. Aug. 10, 2001); <u>Nature's Gifts</u>, 1999
WL 169319 at *5; <u>Village Originals</u>, 25 F. Supp. 2d at 879, and
plaintiff does not dispute the applicability of Rule 9(b) to
Count IV.  It will be assumed that Rule 9(b) applies to Count IV.

In accordance with Rule 9(b)'s requirement that all averments of fraud be stated with particularity,

> a claim of misrepresentation must spell out (1) the identity of the person(s) who made the representations; (2) the time, place, and content of the misrepresentation; and (3) the method by which the misrepresentation was communicated. Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994). The Seventh Circuit has described these requirements as the "who, what, when, where and how" of the circumstances of fraud or mistake. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

Doll Market, 2007 WL 257640 at *1. Fair notice is the most basic consideration. Vicom, 20 F.3d at 777-78; S.E.C. v. Black, 2005 WL 1498893 *3 (N.D. Ill. June 17, 2005); ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc., 2005 WL 1162889 *1 (N.D. Ind. May 16, 2005).

In the Amended Complaint, plaintiff alleges a number of specific examples of items that it claims are falsely suggested to be Indian products. As exhibits to the Amended Complaint, plaintiff attaches photographs of the items and certificates of authenticity containing some of the alleged false suggestions. Plaintiff generally alleges that plaintiff marketed its products through catalogs and its website and at two specific trade shows. As to the specific dolls that are identified, in addition to the aforementioned certificates of authenticity, plaintiff alleges some of the specific language used to describe particular dolls, including "unique Native American dolls," "Cheyenne," and "Native

- 11 -

American."  As to the two trade shows, plaintiff alleges the
dates and locations.  Plaintiff alleges it purchased Duck House
dolls and related items on two specific dates, April 8, 2004 and
January 11, 2005, and also generally alleges that defendant has
been engaged in the same practices continuously since May 1,
2002.

These allegations are sufficient to provide defendant
with the fair notice required by Rule 9(b).  Cf. Doll Market,
2007 WL 257640 at *2.  It is sufficient to identify a corporate
defendant as the source of the alleged false suggestions; it is
not necessary to name the specific employee responsible for
particular statements.  Id.; Gilmore v. Southwestern Bell Mobile
Systems, L.L.C., 210 F.R.D. 212, 224 (N.D. Ill. 2001).  A general
outline of the alleged misrepresentations and the various methods
of dissemination, with some specific examples and dates, suffices
to set forth the what, when, where, and how.  See Doll Market,
2007 WL 257640 at *2; Judson Atkinson Candies, Inc. v.
Latini-Hohberger Dhimantec, 237 F.R.D. 173, 175 (N.D. Ill. 2006);
United States v. Cancer Treatment Centers of America, 2005 WL
2035567 *3 (N.D. Ill. Aug. 19, 2005) (citing United States v.
Cancer Treatment Centers of America, 2003 WL 21504998 *1 (N.D.
Ill. June 30, 2003)).

Defendant contends Count IV should be dismissed because
it is based on "advertising injuries," but plaintiff has not

adequately alleged such injuries nor a claim based on such injuries, such as trademark infringement or Lanham Act unfair competition. As previously discussed, plaintiff has alleged "competitive injuries," which are sufficient to support an IACA claim. Therefore, Count IV would not be dismissed in its entirety even if plaintiff has insufficiently alleged advertising injury. Count IV is an IACA claim, not a trademark or Lanham Act claim. In its response to the motion to dismiss, plaintiff expressly disavows that it is also making a trademark or Lanham Act claim. As previously discussed, Rule 9(b) does not require that damages be pleaded with specificity; it is sufficient to conclusorily allege advertising injury has resulted from defendant's misconduct. Since Count IV will otherwise survive, it is unnecessary to consider at this time whether advertising injury is a type of damages that plaintiff may obtain on its IACA claim. If appropriate, defendant may raise the issue on summary judgment or in the pretrial order based on the discovery that has occurred and more particularized facts. At this time, no aspect of Count IV will be dismissed for failure to state a claim.

Since Count IV is not otherwise subject to dismissal, defendant's contention that § 305e is unconstitutional must be considered.[5] Defendant does not contend that it is

---

[5]Because the United States was not a party to the present action, the parties were required to provide the United States Attorney General with copies of the pleadings in this case so as

- 13 -

unconstitutional to have a statute providing special protections
for Indian products.  Duck House contends it is racially
discriminatory to permit Indian arts and crafts organizations and
individual members of Indian tribes to bring claims pursuant to
§ 305e(c)(1), but not to permit arts and crafts organizations not
composed of members of Indian tribes or individuals who are not
members of Indian tribes who were aggrieved by violations of the
statute[6] to bring a claim.  Defendant recognizes that some
statutes according special treatment to Indian tribes or their
members are constitutional because of the unique status of Indian
tribes as nations within the United States.  See Morton v.
Mancari, 417 U.S. 535 (1974), and its progeny.  Defendant
attempts to distinguish Mancari as being based on preferences for
a political classification.  Citing Andarand Constructors,
Inc. v. Pena, 515 U.S. 200 (1995), defendant contends the
classification contained in § 305e is a race-conscious

_____

to inform the Attorney General of the challenge to the
constitutionality of a federal statute.  The government was
thereafter granted leave to intervene and has filed a brief
opposing defendant's motion and supporting the constitutionality
of § 305e.  See 28 U.S.C. § 2403(a); Fed. R. Civ. P. 24(c).

[6]As defendant points out, a person who is not a member of
an Indian tribe could still be aggrieved by violations of the
IACA.  For example, such a person might sell Indian-type products
adequately disclosed as not being Indian products, but lose sales
to someone selling similar products that are falsely suggested
to be authentic Indian products.  Or a non-Indian could be a
distributor or seller of authentic Indian products, but lose
sales to someone selling inauthentic products falsely suggested
to be Indian products.

- 14 -

preference[7] that would only be upheld as constitutional if
it survives strict scrutiny, which requires a compelling
governmental interest and that the statute be narrowly tailored
to that interest.

Plaintiff and the government dispute this contention on
the merits. First, though, it is contended that defendant lacks
standing to question the constitutionality of the statute. It is
contended that the only appropriate person to challenge the
statute on this ground would be an aggrieved non-Indian
individual or organization who was prevented from bringing an
IACA claim because not an Indian or Indian arts and craft
organization.

In <u>Wynn v. Carey</u>, 599 F.2d 193, 196 (7th Cir. 1979), the
Seventh Circuit held that a physician who intervened as a
defendant to support the constitutionality of an abortion statute
did not need standing to pursue an appeal. In support of that
holding, the Seventh Circuit stated that standing applies only to
plaintiffs and not to defendants.

> We find this controversy over his standing
> rather unusual, and indeed, misdirected.
> The standing doctrine, which is derived from

---

[7]The IACA's definitions of Indian, Indian product, and
Indian arts and craft organization are all based on membership in
an Indian tribe, with the one exception that "Indian" can also
mean a person "certified as an Indian artisan by an Indian
tribe." 28 U.S.C. § 305e(d). The IACA does not have any
definition of Indian based on having Indian bloodlines, ancestry,
or ethnicity.

> the Article III case or controversy
> requirements of the Constitution, applies
> only to plaintiffs.  We are unaware of any
> persuasive authority suggesting that an
> intervening defendant's appeal may be
> dismissed for lack of his standing.  The
> proper analysis by which to test whether an
> intervening defendant has a sufficient
> interest in the case to prosecute an appeal
> is to determine whether the district court
> abused its discretion in permitting the
> defendant to intervene.

Two recent cases in this district have followed this statement as

applicable to any defense brought by a defendant, holding that a

defendant never needs to meet the usual standing requirements in

order to raise a defense.  See SmartSignal Corp. v. Expert

Microsystems, Inc., 2006 WL 1343645 *2 (N.D. Ill. May 12, 2006);

United States v. Sidley Austin Brown & Wood LLP, 2004 WL 905930

*1 (N.D. Ill. April 28, 2004).[8]  The two recent cases, however,

ignore that, subsequent to the Seventh Circuit's decision in

Wynn, the Supreme Court held that an intervening defendant had to

satisfy standing requirements on appeal once the named defendant

declined to appeal, thus overruling both the particular standing

holding of Wynn and its general statement that defendants never

need to satisfy standing.  Diamond v. Charles, 476 U.S. 54, 65

------

[8]In Sidley, it was held, in the alternative, that the
intervening defendant satisfied the standing requirements.  The
holding appears to be that standing requirements need not be
satisfied, with the finding that standing requirements are
satisfied being dictum.

- 16 -

(1986).[9]  When a defendant raises an affirmative defense that is

not encompassed in the plaintiff's case in chief, the defendant

must satisfy the usual standing requirements in order to pursue

the defense.  FDIC v. Main Hurdman, 655 F. Supp. 259, 268-69

(E.D. Cal. 1987); United States v. Dunifer, 997 F. Supp. 1235,

1239-40 (N.D. Cal. 1998), aff'd on other grounds, 219 F.3d 1004

(9th Cir. 2000); Resolution Trust Corp. v. Babovich, 1990 WL

86479 *3-4 (E.D. La. June 19, 1990).  See also National Union

Fire Insurance Co. of Pittsburgh, Pa. v. Continental Illinois

Corp., 666 F. Supp. 1180, 1194 (N.D. Ill. 1987).

        Defendant contends it has standing to raise the rights of

non-Indians because it is a non-Indian who would not be permitted

to bring a claim under the statute.  Although a non-Indian,

defendant does not contend it is an "aggrieved" person as that

term is used in the statute.  In other words, it does not contend

that it has been injured by some other person's violation of the

IACA.  It also does not contend that it is an aggrieved person

who has a desire to bring a claim under the IACA, but has been

deprived of that opportunity because it is not an Indian arts and

craft organization.  Moreover, in the particular case before the

court, the only remaining person accused of violating the IACA is

---

[9]Diamond involved the same intervening physician as in
Wynn, but concerned a constitutional challenge to a different
aspect of the same Illinois abortion law.

- 17 -

Duck House.[10]  Duck House cannot contend that it suffered an
actual injury by being deprived of the opportunity to bring a
claim against itself for violating the IACA.

The government contends that Duck House fails to satisfy
the prudential limitations on standing in that it is seeking to
assert the rights of third parties for whom it is not an
appropriate representative.  Plaintiff focuses on the
constitutional standing requirements.  Plaintiff contends that
Duck House has not suffered any injury in fact in that it has not
been deprived of the opportunity to bring suit under the IACA.
As previously discussed, there is no indication that Duck House
has suffered any such injury, particularly as regards its own
alleged IACA violations that are the remaining subject of this
lawsuit.  The only possible injury that Duck House has suffered
is not redressable by its challenge to the constitutionality of
§ 305e.  The only actual injury that Duck House has suffered is
having claims brought against it by plaintiff.  Potentially, it
could suffer the actual injury of having to pay damages for
violating the IACA.  Those injuries would not be redressed by
finding that § 305e's limitation as to which individuals and
private entities may bring IACA claims is unconstitutionally
discriminatory.  The remedy for such a constitutional violation

_____

[10]Count V is still pending, which alleges violations of
the IACA by Swiss Colony, but those allegations are also that
Swiss Colony sold Duck House products.

would not be to render § 305e unenforceable, but simply to take
away the limitation on aggrieved individuals or arts and craft
organizations having to be or have members of Indian tribes.
Such relief would not prevent plaintiff from continuing to pursue
its claims against Duck House.  Instead, it would open Duck House
to possible suits from additional non-Indian, aggrieved parties.
Because the purported equal protection violation contained in
§ 305e has not caused Duck House to suffer an actual injury nor
would relief for such a violation relieve any injury that Duck
House has suffered, Duck House lacks standing to raise the
defense that § 305e is improperly discriminatory.

        Alternatively, if Duck House had proper standing, its
contention that § 305e represents an improper application of a
racial classification would be denied.  As previously discussed,
the classifications contained in the statute are based on
membership in or certification by an Indian tribe.  That is a
political or administrative classification, not a racial
classification, and therefore is subject to rationality review,
not strict scrutiny.  Means v. Navajo Nation, 432 F.3d 924,
932-33 (9th Cir. 2005), cert. denied, 127 S. Ct. 381 (2006).
Duck House does not dispute that § 305e would stand up to
rationality review.

        Count IV will not be dismissed.

- 19 -

Still to be considered is Count V. Neither side presents
a well-developed argument regarding Count V. Neither side cites
any case law nor does either side attempt to delineate the
elements of plaintiff's indemnity claim. The original Complaint
included claims against Swiss Colony. Plaintiff alleges that it
settled with Swiss Colony and that part of that settlement
represented damages related to products supplied to Swiss Colony
by Duck House. Plaintiff alleges that Duck House was required to
indemnify Swiss Colony for any expenses and damages based on any
IACA violations related to Duck House products.[11] As part of the
settlement with Swiss Colony, Swiss Colony assigned to plaintiff
any indemnity, contribution, or other claim that Swiss Colony had
against Duck House related to claims plaintiff alleged in the
present action based on Duck House supplying Indian products to

---

[11]The language of any such agreement is not alleged in
the Amended Complaint nor is a copy of any agreement provided as
an exhibit to the Amended Complaint. Because any such agreement
is central to the allegations of Count V, the agreement itself
could have been considered if provided as an exhibit to
defendant's motion to dismiss. Although defendant contends
Count V is deficient for failing to provide a copy of the
agreement, unlike Illinois pleading rules, see 735 ILCS 5/2-606,
federal pleading rules do not require that the contents of
contracts be attached to or expressly alleged in a complaint.
See Fed. R. Civ. P. 10(c); Steigmann v. Democratic Party of
Illinois, 406 F. Supp. 2d 975, 985-86 (N.D. Ill. 2005); Randle v.
Glendale Nissan, Inc., 2005 WL 281229 *2 (N.D. Ill. Feb. 2,
2005); McDonald v. Washington Mutual Bank, FA, 2000 WL 967994 *5
(N.D. Ill. July 11, 2000).

- 20 -

Swiss Colony.[12]  There apparently are two aspects to Count V.

Plaintiff seeks to recover from Duck House the portion of Swiss

Colony's settlement that can be attributed to Duck House

products.[13]  Apparently, plaintiff also seeks to recover IACA

damages based on Duck House products sold by Swiss Colony that go

beyond the amount of the settlement with Swiss Colony.[14]  Since

defendant does not make any sufficient argument to the contrary,

it will be assumed that plaintiff potentially could recover both

the appropriate portion of the actual settlement attributable to

Duck House products and any additional IACA damages that

---

[12]A copy of the assignment is attached to the Amended
Complaint as Exhibit Z.  It provides:  "[Swiss Colony] . . .
assigns, conveys and transfers to [NAA] all of [Swiss Colony]'s
rights, title and interest, if any, and without warranty, express
or implied, in any claims, damages, costs, attorneys' fees,
demands, lawsuits, actions, or causes of action, whether based in
contract, equity, tort, statute, contribution, or other theories
of recovery which it now has or which may hereafter accrue or
otherwise be acquired against [Duck House] which are solely
related in any manner to the claims alleged in the complaint
filed in . . . 05 C 2176.  The aforementioned assignment is based
upon the actions of [Duck House] supplying Indian products or
Indian-style products to [Swiss Colony] limited to those Indian
products alleged in . . . 05 C 2176.  Except as specifically
described above, [Swiss Colony] retains all rights or claims
pertaining to [Duck House]."

[13]Plaintiff does not provide a copy of the settlement
with Swiss Colony, nor does it allege the monetary amount of the
settlement nor the portion attributable to Duck House products.
The Amended Complaint is also silent regarding whether Swiss
Colony has already paid any portion of the settlement amount.

[14]The first aspect will be referred to as the
"settlement-indemnity" and the second aspect will be
referred to as the "damages-indemnity."

- 21 -

plaintiff can prove Swiss Colony would have been subject to based on Duck House products.  See NAA v. Adobe Moon Arts, Inc., 2001 WL 55544 *2 (N.D. Ill. Jan. 18, 2001) (even if not recoverable on a contractual indemnity claim, damages beyond the settlement amount might be recoverable pursuant to other types of claims that were also assigned to the plaintiff).

As to the settlement-indemnity claim, plaintiff would have to show that (a) the indemnity clause covered the settled claims (2) the settlement was reasonable, and (3) Swiss Colony settled under a reasonable apprehension of liability.  See Flodine v. State Farm Insurance Co., 1394977 *8 (N.D. Ill. March 19, 2003); IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc., 2001 WL 667816 *4 (N.D. Ill. June 7, 2001); Westamerica Mortgage Co. v. Tri-County Reports, Inc., 670 F. Supp. 819, 821 (N.D. Ill. 1987); In re Complaint of Holly Marine Towing, Inc., 2003 WL 21920248 *1 (N.D. Ill. Aug. 12, 2003) (admiralty law).  On the settlement-indemnity claim, plaintiff would not need to prove that Swiss Colony would actually have been liable for violating the IACA, it "need prove only that, by settling, [Swiss Colony] was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer."  Westamerica, 670 F. Supp. at 821 (quoting St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corporation, 12 Ill. App. 3d 165, 298 N.E.2d 289, 292 (1st Dist.

1979)).  Accord Flodine, 2003 WL 1394977 at *8; Illinois Tool
Works Inc. v. Home Indemnity Co., 24 F. Supp. 2d 851, 854 (N.D.
Ill. 1998).  That does not require proof of the fraud itself,
that is, the false suggestion element of an IACA claim against
Swiss Colony.

Since neither party attempts to delineate the elements of
the damages-indemnity claim, the exact elements of that claim are
unclear.  Presumably, however, an element of that claim would be
a showing of IACA violations representing damages in excess of
the settlement amount. As with the Count IV claim, plaintiff
would have to show that Duck House's products were falsely
suggested to be authentic Indian products.  Also, plaintiff would
have to show that this false suggestion is attributable to Duck
House, not solely the action of Swiss Colony.  For example, if
Duck House attached sufficient disclaimers of authenticity to a
product, but Swiss Colony removed those disclaimers, presumably
Swiss Colony would not have an indemnification claim against Duck
House for any IACA violation.

Ordinarily, an indemnification claim is not the type of
claim subject to Rule 9(b) pleading.  Two cases in this district
have held that, even when seeking indemnification for a third
party's fraudulent conduct, the plaintiff need not plead the
underlying fraud with specificity.  See Fidelity National Title
Co. v. Law Title Insurance Co., 2005 WL 1126899 *12-13 (N.D. Ill.

May 3, 2005); ABC-NACO, Inc. v. DeRuyter, 1999 WL 521171 *5 (N.D. Ill. July 14, 1999). Part of the reasoning in those cases was that the purpose of Rule 9(b) did not apply in that the defendant itself was not being accused of fraud and therefore need not be concerned about a tarnished reputation. See Fidelity National, 2005 WL 1126899 at *12. In Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 783 (7th Cir. 1999), the Seventh Circuit held that the agency relationship connecting a principal to the fraud of its agent needed to be alleged with particularity because the agency relationship was based on the same circumstances as the underlying fraud and therefore had the potential to tarnish the reputation of the principal, which is the concern behind Rule 9(b). See also Brugos v. Nannenga, 2005 WL 3730317 *2-3 (N.D. Ind. Dec. 5, 2005) (distinguishing Lachmund when the agent's fraud and the agency relationship are based on different circumstances).

The damages-indemnity aspect of Count V is distinguishable from Fidelity-National and ABC-NACO. Unlike those cases, for the damages-indemnity claim in this case fraudulent conduct by defendant must be shown, not just fraudulent conduct by a third party. On the damages-indemnity claim, the same circumstances that underlie Swiss Colony's liability also underlie Duck House's liability. Thus this claim is analogous to the situation in Lachmund. Rule 9(b) applies to the damages-

indemnity aspect of Count V. It does not apply to the
settlement-indemnity aspect of Count V which does not require
proof of an actual false suggestion. Since plaintiff does not
allege any of the particulars of Swiss Colony's IACA violations,
the damages-indemnity aspect of Count V will be dismissed.[15]

Since Rule 9(b) does not apply to the settlement-
indemnity aspect of Count V, that aspect of the claim need not be
pleaded with particularity. Plaintiff was not required to
expressly allege in the Amended Complaint, nor attach as an
exhibit, the contents of the alleged indemnity agreement. <u>See</u>
Fed. R. Civ. P. 10(c); <u>McDonald v. Washington Mutual Bank, FA</u>,
2000 WL 967994 *5 (N.D. Ill. July 11, 2000). Plaintiff
adequately alleges the existence of and breach of an indemnity
agreement. <u>See</u> <u>Adobe Moon</u>, 2001 WL 55544 at *4. Contrary to
defendant's assertion, where a settlement has occurred, neither
prior notice to the indemnitor nor a prior request to indemnify
is required. <u>Id.</u>; <u>Westamerica</u>, 670 F. Supp. at 821.

Count V will only be dismissed to the extent it seeks
recovery of amounts other than those represented by the
settlement with Swiss Colony.

---

[15]If plaintiff subsequently moves to file an amended
complaint containing particularized pleading of this claim, the
motion seeking leave to amend must make clear the theory of
liability that would support a recovery greater than the
settlement amount with Swiss Colony and cite case law supporting
that theory.

IT IS THEREFORE ORDERED that defendant Duck House's motion to dismiss [55] is granted in part and denied in part. Defendant Duck House's adopted motion to dismiss [77] is denied. Count V of the Amended Complaint is dismissed to the extent that it is based on the recovery of amounts other than those represented by the settlement with Swiss Colony. Within two weeks, Duck House shall answer the remaining allegations of the Amended Complaint. All discovery shall be completed by June 29, 2007. A status hearing will be held on April 18, 2007 at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:

MAR 0 1 2007